J-A27027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.A.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.L.S., | |
| Appellee | No. 695 WDA 2015 |

Appeal from the Order entered April 1, 2015,
in the Court of Common Pleas of Lawrence County,
Family Court, at No(s): 10871 of 2014, C.A.

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                **FILED:  OCTOBER 30, 2015**

M.A.S. ("Father") appeals from the trial court order dated March 31, 2015, and entered on April 1, 2015, that granted the motion for special relief filed by M.L.S., ("Mother"), and suspended Father's overnight visitation with the parties' minor child, M.A.S. ("Child"), who has Down Syndrome and sleep apnea, until Child has adjusted to using her continuous positive airway pressure machine ("CPAP") on a nightly basis.  We quash the appeal, as it is interlocutory.

On August 26, 2014, Father filed a custody complaint against Mother, requesting shared legal custody and reasonable partial physical custody of Child.  On that same date, the trial court entered an order scheduling a custody conciliation conference for September 26, 2014.  On September 9,

2014, the trial court continued the custody conciliation conference to October 1, 2014.

The parties appeared before the custody conciliation officer on October 1, 2014. Thereafter, on October 20, 2014, the trial court entered an order, dated October 17, 2014, scheduling a review conference before a custody conference officer for December 15, 2014, and awarding the parties shared legal custody, Mother primary physical custody, and Father unsupervised partial physical custody as set forth in the order. The order further provided that, if all went well pending the review conference, the court would address Father's request for partial physical custody every Wednesday evening and every other Monday evening, in addition to any other issues raised by the parties at that time.

On December 5, 2014, Mother filed a petition for special relief, alleging that Child suffers from obstructive sleep apnea and Down Syndrome. Mother asserted that Child must adjust to CPAP therapy, and that overnight partial physical custody with Father is disruptive to the needs and medical concerns presented by Child's conditions. Mother alleged that her home environment provided Child regularity and consistency necessary for Child to adjust to CPAP use. Mother claimed that Father is not certified in proper First Aid and cardiopulmonary resuscitation ("CPR") techniques. Mother alleged that the court could provide Father regular and more frequent partial physical custody without awarding him overnight custody. Mother claimed

that she had concerns regarding Father's ability to care for Child, generally, for an entire weekend, and has further concerns as to Child's safety and the supervision that Father will provide.

On December 5, 2014, the trial court entered an order that directed the parties to appear at a hearing on Mother's petition for special relief on February 13, 2015. The order further directed that the custody order issued on October 7, 2014[1] would remain in full force and effect, and directed Father to obtain certification for First Aid and CPR training. The order provided that Father was encouraged to obtain the certificates prior to the hearing scheduled for February 13, 2015.

On December 22, 2014, the trial court entered a custody order, dated December 19, 2014, providing that, after the custody conciliation conference on December 15, 2014, the trial court was directing that Father's periods of partial physical custody would continue every other weekend, from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

On February 13, 2015, the trial court held the first day of the evidentiary hearing on Mother's December 5, 2014 petition for special relief. At the hearing on February 13, 2015, Mother testified, and had the trial court admit several exhibits into evidence. On February 18, 2015, the trial

---

[1] The December 5, 2014 order stated that the custody order issued on October 7, 2014, would remain in effect. This, however, was apparently a typographical error, as the previous custody order was issued on October 17, 2014.

court entered an order, dated February 13, 2015, scheduling the second day of hearing to occur on March 26, 2015. On March 26, 2015, Mother presented the testimony of her mother, Child's maternal grandmother ("Maternal Grandmother"). Father testified on his own behalf. Father's counsel then cross-examined Mother. Mother had the trial court admit an exhibit into evidence.

On April 1, 2015, the trial court entered an order, dated March 31, 2015, that granted Mother's petition for special relief, and directed that Father would not have overnight visits with Child. The trial court explained its decision to grant Mother's request for special relief as follows:

> The [trial court] is obligated to analyze the custody standards on a subjective basis and apply the best interest analysis to the particular facts of this case. If this case involved a seven-year-old child who was adjusting to the typical changes that children face when parents are in the process of a divorce, the [trial court's] analysis would be relatively elementary. However, this case poses a unique set of facts, in that [Child] has been diagnosed with Down [S]yndrome and sleep apnea. [Child's] disposition tends to promote anxious tendencies, and the [trial court] believes that [Child's] anxiety is not subdued by her parents' recent separation. [Child] is additionally adjusting to an alternative bedtime routine that currently requires constant management.

> The [trial court] finds Mother's argument that any advancement she is making is undone after a weekend visitation with Father credible. Father's approach to [Child's] bedtime routine seems less regimented, which is a negative characterization in dealing with a child like [Child]. Typically, the [trial court] would find the concerns expressed by Mother to be deminimus [sic], but the [trial court's] determination must be considerate of the unique circumstances of this case. Therefore, the [trial court] believes that it is appropriate to grant Mother's Petition for Special Relief, and suspend Father's periods of

- 4 -

overnight visitation. In reaching this determination, the [trial court] is not trying to penalize Father, but rather, ensure that [Child] is able to progress through this difficult time in her life. The [trial court] believes [Child] has to become adjusted and comfortable with using her c-PAP machine with Mother, who serves as her primary custodian. [Child's] diagnosis mandates a disciplined routine, and the [trial court] believes that the c-PAP machine is vital to [Child's] health. Therefore, the [trial court] will schedule a custody conciliation conference so that the parties can implement an alternative custody schedule that permits Father to have custody with [Child] more frequently than every other weekend. Father's custody schedule must occur on a more frequent basis, but without overnight visitation, at least until [Child] becomes adjusted to using the c-PAP machine on a nightly basis.

Trial Court Opinion, 4/1/15, at 5-6.

The trial court order further provided that an expedited custody conciliation conference was scheduled to occur on April 8, 2015. The order stated:

The parties shall endeavor to work out a new [custody agreement] that provides Father with visitation on a more frequent basis, but without overnights. If the parties cannot reach an agreement, the custody conciliation officer shall issue a proposed order consistent with the determination set forth in this opinion.

Trial Court Order, 4/1/15, at 1.

On April 23, 2015, Father timely filed a notice of appeal from the order entered on April 1, 2015, along with a concise statement of errors complained of on appeal.

In his brief on appeal, Father set forth the following issues:

1. Whether the Trial Court erred or abused its discretion in suspending Father's overnight partial custody where the clear,

convincing and credible evidence of record did not support the same[?]

2. Whether the Trial Court erred and/or abused its discretion in finding that any progress Mother made in getting the [c]hild adjusted to her bedtime routine, including the use of the C-PAP machine, is undone after Father's weekend visitation where the clear, convincing and credible evidence of record did not support such a finding or any reasonable inference thereof[?]

3. Whether the Trial Court erred and/or abused its discretion as the clear, convincing and credible evidence of record did not establish a nexus between Mother's Complaint about Father's conduct and the [trial court's] factual findings[?]

Father's Brief, at 5.

Father argues that the trial court's finding, that Mother's advancements with Child's sleep apnea were undone after Father's exercise of his weekend custody of Child, is not supported by the evidence of record. Father alleges that the evidence clearly contradicted such a finding, and that the evidence established that Child had not regressed, but had progressed.

Father claims that the evidence established that Child's average daily use of the CPAP machine doubled, including the time after the commencement of Father's overnight weekend custody. Father asserts that there was no significant drop off in the amount of Child's usage of the C-PAP machine after Father's weekend exercise of his custody.

Moreover, Father contends that the record is devoid of any evidence to establish:

> (a) Child's lack of use of the C-PAP during Father's weekend caused any harm to Child;

(b) Father's weekends caused any regression in adjusting to the bedtime routine; or

(c) what amount of progress Mother would have made but for [Child's] weekends with Father.

Father's Brief, at 8.

Additionally, Father argues that the evidence in the record did not support the trial court's finding that Father's bedtime approach for Child was less regimented than Mother's routine. Father asserts that Mother did not present any evidence of her bedtime routine for Child. Father urges that the evidence did not establish any nexus between Mother's complaints and Father's conduct, or the trial court's findings and inferences concerning Father's conduct. Father's Brief, at 8. Father seeks for this Court to vacate the April 1, 2015 order, and reinstate his overnight custody of Child.

In response, Mother argues that Father must demonstrate that the trial court erred in its findings in applying the best interest of the child standard. She asserts that, in suspending Father's overnight partial custody, the trial court paid particular attention to Child's medical conditions and her special needs. Thus, Mother contends that this Court should affirm the trial court order.

Initially, we observe that, as the hearings in this matter were held on February 13, 2015 and March 26, 2015, the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding

commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) *quoting **Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004).

In ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error

of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider. *See E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5328(a) of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.[2]

Preliminarily, we must determine whether this appeal is properly before us "because such a question goes to this [C]ourt's jurisdiction and may be properly raised by the court *sua sponte*." ***Mensch v. Mensch***, 713 A.2d 690, 691 (Pa. Super. 1998); ***Wagner v. Wagner***, 887 A.2d 282, 285

---

[2] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).  Although applicable at the time of the custody hearings in this matter, there was no evidence that would have required the trial court's consideration of this factor.

(Pa. Super. 2005). "Generally, appeals lie only from a 'final order.'" *In re J.S.C.*, 851 A.2d 189, 190 (Pa. Super. 2004) (citing 42 Pa.C.S.A. § 742). This Court has held "a custody order will be considered final and appealable only after the trial court has completed its hearings on the merits and the resultant order resolves the pending custody claims between the parties." *G.B. v. M.M.B.*, 670 A.2d 714, 715 (Pa. Super. 1996). "Generally, a custody order will be considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." *In re F.B.*, 927 A.2d 268, 271 (Pa. Super. 2007).

It is apparent from the language in the April 1, 2015 order that the trial court entered the order before the court had completed its hearings on the merits, and that the trial court did not intend that the order would constitute a complete resolution of the custody claims pending between the parties. The trial court included language in the April 1, 2015 order regarding the custody conciliation conference scheduled to occur on April 8, 2015, and directing the parties to reach an agreement, and, if they were unable to reach an agreement, for the custody conciliation officer to file a proposed order. We, therefore, find that the appeal is interlocutory, and

that we must quash it.  *G.B.*, 670 A.2d at 715; *In re F.B.*, 927 A.2d at 271.[3]

Appeal quashed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2015

---

[3] The trial court docket in the certified record in this matter reflects that, after a custody conciliation conference before a custody conciliation officer on April 8, 2015, the trial court, in fact, entered a custody order on April 15, 2015.